WILLIAM JEDDELOH v. F. M. HOCKENHULL, INDIVID-
UALLY AND *d. b. a.* WELLS ELECTRIC SHOP,
AND ANOTHER.[1]

April 20, 1945.

No. 33,927.

[1]Reported in 18 N. W. (2d) 582.

*Leo J. Seifert* and *William P. Horan,* for appellants.

*Putnam & Carlson* and *Moonan & Moonan,* for respondent.

YOUNGDAHL, JUSTICE.

This is an appeal from an order denying an alternative motion for judgment or a new trial.

On November 3, 1943, at the intersection of two country roads about four miles northeast of Wells, an automobile owned and driven by plaintiff and a truck owned by defendant Hockenhull and driven by defendant Johnson collided with each other, resulting in serious and permanent injuries to both drivers. Plaintiff sued to recover damages for personal injuries to himself and damage to his automobile, and both defendants counterclaimed— defendant Johnson seeking damages for personal injuries and defendant Hockenhull for damage to his automobile. A jury returned a verdict for plaintiff, and upon the denial of defendants' alternative motion, this appeal followed.

Two questions are presented by the appeal: (1) Was plaintiff guilty of contributory negligence as a matter of law? (2) Does the record show reversible error in the reception of certain evidence relative to insurance?

Defendants contend that they were entitled to judgment notwithstanding the verdict because of the fact that plaintiff was guilty of contributory negligence as a matter of law.

Just prior to the collision, plaintiff was driving north on a level gravel road running north and south, and defendant was driving west on another gravel road running east and west, the view of both drivers being open and unobstructed. The collision occurred within the intersection of these two highways. The day was clear, and there was no wind. Although it was still light enough to drive without lights, the headlights of both vehicles were lit.

Defendant Johnson could not testify, for the injury he received caused permanent impairment of his speech. The only witness who testified concerning the accident was plaintiff. He testified that when he was from eight to ten rods south of the intersection he saw the lights of defendants' truck about 500 to 600 feet east of the intersection coming over a slight knoll; that plaintiff was then driving about 25 miles per hour; that he did not know how fast the truck was approaching; that plaintiff slackened his speed to 15 miles per hour and looked again to the east when about even with the south line of the intersection and then saw the truck about 100 to 125 feet from the intersection; that plaintiff proceeded across, and, as the front wheels of his automobile were even with the north line of the east and west road, the front part of the truck struck the right rear part of plaintiff's automobile. Johnson made a statement to his employer following the accident in which he said he did not see plaintiff coming. Defendants produced a witness who saw the truck some distance east of the intersection and testified that its speed was about 35 miles per hour. These, briefly, are the essential facts relating to the happening of the accident.

Defendants assert that the record requires a holding that plaintiff was guilty of contributory negligence as a matter of law. We find ourselves unable to agree with this contention. Contributory negligence is ordinarily a question for the jury. Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758. It is our conviction that upon the record before us a jury question was presented. In the following cases, we held that contributory negligence was a jury issue under facts somewhat analogous to those

in the instant case: Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898; Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188; Ernst v. Union City Mission, 199 Minn. 489, 272 N. W. 385.

It is true, as defendants contend, that merely because plaintiff entered the intersection first does not necessarily mean that he had the right of way. Under Minn. St. 1941, § 169.20, subd. 1 (Mason St. 1940 Supp. § 2720-196), it is provided that the driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. But it is also provided in the same section that the driver of a vehicle driven at an unlawful speed shall forfeit any right of way given by the statute. Therefore, under said statute, though plaintiff was on the left, if he lawfully entered the intersection first, he was entitled to the right of way. Yien Tsiang v. Minneapolis St. Ry. Co. 213 Minn. 21, 4 N. W. (2d) 630. There is no claim of excessive speed on the part of plaintiff. At least, it cannot be said as a matter of law that he drove at an unlawful speed.

Plaintiff had a right to assume until and unless he became aware of the contrary that the driver of the approaching vehicle would exercise ordinary care. Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188, and Guthrie v. Brown, 192 Minn. 434, 435, 256 N. W. 898, 899, *supra*. In the latter case, the court said:

"* * * The jury could further find that plaintiff entered the intersection at a time when defendant was at such a distance therefrom that she had no reasonable ground to apprehend that he would collide with her car if he exercised ordinary care. She testified that she was not aware of the speed at which he was going. She did not know that he had failed to look ahead or to see her car. She had a right to assume that he would see her car then in plain view ahead of him at and in the intersection."

It is our opinion that the reasoning in that case is applicable to the facts in the instant case. We believe reasonable minds might differ as to whether Johnson should have yielded the right of way to

plaintiff, or whether he was justified, under the circumstances, in proceeding into the intersection. Of course, the driver on the left is not permitted to take close chances. If there is reasonable danger of collision, he must yield the right of way. O'Connor v. Sinykin, 162 Minn. 382, 202 N. W. 891. On the other hand, the right-of-way rule is not an unyielding one. It does not invariably give the driver on the right the privilege of crossing. Because a driver is on the right, he is not absolved from the obligation of due care. Bell v. Pickett, 178 Minn. 540, 227 N. W. 854; Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647. The right-of-way rule is a relative one, and the question of its violation depends upon the circumstances of each case and is usually a fact question for the jury. Bradley v. Minneapolis St. Ry. Co. 161 Minn. 322, 201 N. W. 606, 46 A. L. R. 993.

Plaintiff was not guilty of contributory negligence as a matter of law because he did not look to the right again after he started to cross the intersection. Due care is not determined by the number of times a driver looked, nor by how often, or when, or from where. Kraus v. Saffert, 208 Minn. 220, 293 N. W. 253; Yien Tsiang v. Minneapolis St. Ry. Co. 213 Minn. 21, 4 N. W. (2d) 630, *supra*. *Cf.* Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289; Peyla v. D. M. & I. R. R. Co. 218 Minn. 196, 15 N. W. (2d) 518, 154 A. L. R. 505.

We conclude that the issue of contributory negligence was a jury question and that the trial court correctly denied defendants' motion for judgment notwithstanding the verdict.

■■ In any event, defendants contend that there should be a new trial because of error in the reception of evidence relating to insurance. In order to understand the undue emphasis that was given to insurance at the trial, it is necessary to quote the evidence in some detail.

The insurance matter came into the testimony as a result of the cross-examination of plaintiff by defendants' counsel concerning a conversation that took place between plaintiff and defendant Hock-

enhull in the latter's electric shop in Wells, in which cross-examination plaintiff was asked:

"Q. I see. And at that time did you tell Mr. Hockenhull that you had tried to beat his driver across this intersection?

"A. No, I did not."

When Hockenhull was subsequently called for cross-examination under the statute by plaintiff, Hockenhull testified that plaintiff did not tell him that he tried to beat his (Hockenhull's) driver across the intersection. Omitting testimony not pertinent to this inquiry, the following took place in the cross-examination of Hockenhull under the statute:

"Q. But, did he tell you that he was a laboring man and that he did not have much money?

"A. He didn't say that. We talked about insurance.

"Q. You talked about insurance?

"A. That is right.

"Q. What was said about that?

"Mr. Seifert: Now we object to that as incompetent, irrelevant, and immaterial.

"Mr. Moonan: They started the conversation matter, if the court please. We are entitled to go into this full conversation. Where a part of the conversation was brought out, we are entitled to go into the rest of it.

"The Court: Overruled.

"Mr. Seifert: Exception.

"A. He asked me if I had insurance.

"Mr. Moonan: He asked you if you had insurance?

"A. Yes.

"Mr. Seifert: Same objection, Your Honor.

"The Court: Same ruling.

"Mr. Moonan:

"Q. What did you say?

"A. I said I did.

"Q. What did you say further?

"A.  I asked him if he had some.

"Q.  What did he say?

"A.  He said he did.

"Q.  He said he did?

\*    \*    \*    \*    \*

"Q.  Well, then, he did not say to you that he tried to beat your driver across the intersection, did he?

"A.  He didn't say that to me, no."

The matter of insurance was entirely irrelevant to the question whether plaintiff had said that he tried to beat the other driver across the intersection. Evidence relating to the former was therefore inadmissible. When a statement forming part of a conversation is given in evidence by one party, whatever was said in the same conversation tending to explain or qualify that statement may be given in evidence by the other party, but the latter cannot give in evidence distinct and independent statements in the same conversation in no way connected with the statement proved by his adversary on the ground that he had opened the subject by his examination. Rouse v. Whited, 25 N. Y. 170, 82 Am. D. 337; State v. Then, 118 N. J. L. 31, 190 A. 495; Canadian Industrial Alcohol Co. Ltd. v. Nelson, 38 Del. 26, 188 A. 39; 20 Am. Jur., Evidence, § 276.

Plaintiff contends, however, that the insurance matter was brought out by defendants themselves. It appears that when Hockenhull was called for cross-examination under the statute by plaintiff he volunteered the statement that there was talk about insurance; but the mere fact that a witness goes beyond the purport of a question asked him or· volunteers statements does not open up the issues for testimony of like character by the adversary. Fitz-Simons & Connell Co. v. Braun & Fitts, 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421; City of Seattle v. Smythe, 97 Wash. 351, 166 P. 1150, L. R. A. 1918A, 228; 20 Am. Jur., Evidence, § 274. In the instant case, the only question asked of plaintiff by defendants' counsel concerning the conversation between plaintiff and Hock-

enhull was whether plaintiff had told Hockenhull that he had tried to beat Hockenhull's driver across the intersection. Upon plaintiff's denial that he had made such a statement, defendants' counsel questioned plaintiff no further concerning the conversation. Therefore, in the cross-examination of Hockenhull as to that conversation, plaintiff's counsel should have been restricted by the trial court to eliciting in evidence only such part or parts of the conversation as related to the question whether or not plaintiff had stated that he tried to beat the other driver across the intersection.

In support of his contention that the entire conversation should have been received, plaintiff cites Ward v. De Young, 210 Mich. 67, 177 N. W. 213. In that case, the court permitted the introduction of the entire conversation on the ground that it contained an admission, and the part of the conversation relating to insurance was inseparably connected with the remainder of it. However, see, Kuhn v. Kjose, 216 Iowa 36, 248 N. W. 230, where the supreme court of Iowa sustained the lower court in refusing to receive a part of the conversation relating to. insurance and in restricting the evidence solely to that part of the conversation containing an admission. Whatever the rule may be in cases where an admission is involved, those cases are not in point here, because of the fact that testimony in the instant case does not involve an admission. Hockenhull denied that plaintiff had said that he tried to beat the other driver across the intersection. That should have ended the matter as far as that inquiry was concerned. Any testimony elicited concerning insurance had no reference whatever to that question and was entirely irrelevant to it. The question of insurance was entirely collateral to the issues involved and had no bearing upon the questions of negligence or the liability of either party.

But, even assuming that there was no reversible error in receiving this evidence, it was clearly error requiring a new trial to permit the insurance matter to be pursued further over defendants' objections. The following questioning in the same cross-examination was then had:

"Q. He asked you if you had insurance. You told [him] you did have insurance. And you told him the names of the insurance companies, didn't you?

"Mr. Seifert: I object to that as incompetent, irrelevant, and immaterial.

"Mr. Moonan: We are entitled to go into the full conversation.

"The Court: Overruled.

"Mr. Seifert: Exception.

"Mr. Moonan:

"Q. That is correct, isn't it?

"A. That is right.

"Q. You told him the names of the companies and then he told you, because of his fear that he might not be able to remember them, he asked you to write down the names of the companies, didn't he?

"A. That is right.

"Q. And I call your attention to plaintiff's exhibit J. I will ask you if that is your writing and the names of the insurance companies that you gave him?

"Mr. Seifert: May we have an objection to all this line of cross-examination, please?

"The Court: Yes, you may.

"Mr. Moonan:

"Q. That is correct, isn't it?

"A. Yes, that is right.

"Q. You gave him the names of the Hartford Accident and Indemnity Company and the Aetna Casualty and Surety Company?

"A. That is right.

"Q. Did you tell him that both of those companies were on your automobile?

"Mr. Seifert: Just a minute. We object to that as incompetent, irrelevant, and immaterial.

"The Court: Overruled.

"Mr. Moonan:

"Q. Did you tell him both of those companies were on your automobile?

"A. I did not tell him they were on the automobile.

"Q. What did you tell him?

"A. I told him the Aetna insurance was on the automobile and the other the compensation covering men working for me.

"Q. That was the Hartford Accident and Indemnity?

"A. Yes.

"Q. That covered the men working for you?

"A. That is right.

"Q. Then the Aetna Casualty and Surety Company was on your automobile?

"A. That is right.

"Mr. Moonan: We offer in evidence plaintiff's exhibit J.

"Mr. Seifert: We object to that as incompetent, irrelevant, and immaterial.

"The Court: Overruled. Plaintiff's exhibit J is received.

"Mr. Seifert: Exception."

Surely, it cannot reasonably be contended that exhibit J was any part of the conversation. It was clearly inadmissible. But the insurance discussion did not terminate there. After Hockenhull had been cross-examined under the statute, plaintiff was called on redirect, and under questioning by his counsel the following questions and answers appear in the record:

"Q. Mr. Jeddeloh, when you talked with Mr. Hockenhull in his office, in the electric shop office, did you state to him that you had insurance on your car?

"A. I had no insurance on that car.

"Mr. Seifert: Just a moment. We object to that as not responsive, and move that the answer be stricken out.

"The Court: The answer may be stricken. I do not think the witness understood the question.

"Mr. Moonan: Did you state or did you tell Mr. Hockenhull that you had insurance on your automobile?

"A. I don't think he understood me.

"Mr. Seifert: We move that the answer be stricken out.

"Mr. Moonan: Did you tell him that?

"A. I did not tell him that, no."

As long as plaintiff denied that he stated that he tried to beat Hockenhull's driver across the intersection and Hockenhull corroborated him in this respect, there was no necessity for questioning plaintiff further concerning this matter on redirect examination. At any rate, the questioning should have been restricted to that part of the conversation relating to what was said by plaintiff, if anything, about trying to beat Hockenhull's driver across the intersection, and the testimony concerning insurance should have been excluded. The rule in Minnesota has been stated as follows:

"* * * When part of a conversation is brought out on cross-examination the remainder of the conversation may be brought out on the re-direct examination, if it tends to qualify or explain the part disclosed on the cross-examination; *otherwise not.*" (Italics ours.) 6 Dunnell, Dig. § 10319. See, also, Hathaway v. Brown, 18 Minn. 373 (414); 3 Jones, Evidence, Civil Cases (4 ed.) § 873; 7 Wigmore, Evidence (3 ed.) § 2115; 20 Am. Jur., Evidence, § 276.

Assuming, however, that plaintiff had a right to deny that he told Hockenhull that he had insurance (even though it was a purely collateral matter, foreign to any issue being tried), yet, after such denial, it cannot with good reason be argued that counsel had a right to continue the insurance inquiry by asking plaintiff whether he had insurance. Any further questioning concerning insurance was clearly beyond the pale of reasonable inquiry. This is what followed:

"Mr. Moonan: Do you have insurance on your automobile?

"A. No, I have not.

"Mr. Seifert: Just a moment. We object to that as incompetent, irrelevant, and immaterial; prejudicial to these defendants. I move that the answer be stricken out."

"Mr. Moonan: I submit, Your Honor, that it is entirely proper, for the reason that Mr. Hockenhull testified on the stand that Mr. Jeddeloh told him he had insurance on his automobile. This witness has now testified that he did not so tell Mr. Hockenhull. In corroboration of that, he is entitled to show that he did not have insurance on his automobile.

"Mr. Seifert: The defendants take exception to counsel's statement and argument, in front of this jury, on the grounds that it is improper and prejudicial to these defendants. We ask the court to instruct the jury to disregard such statement.

"The Court: The motion to strike is denied, and your request to instruct the jury at this time is also denied. It is not intimating what the court will say on that point in the final instructions.

"Mr. Seifert: Exception."

The only reference the court made in its charge as to insurance was the following statement, intermingled with instructions as to damages: "You will forget any insurance in the matter." But the damage had already been done. The above quoted statement in the charge did not purge the record of the error. Evans v. C. M. & St. P. Ry. Co. 133 Minn. 293, 158 N. W. 335; Krenik v. Westerman, 201 Minn. 255, 275 N. W. 849. It was error to receive this testimony and permit such overemphasis to be placed on insurance. Lee v. Osmundson, 206 Minn. 487, 289 N. W. 63; see, also, Brown v. Murphy T. & S. Co. 190 Minn. 81, 251 N. W. 5; Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251; Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39. This is not a case where there was reference to insurance in the examination of jurors as in Storhaugen v. Motor Truck Service Co. 171 Minn. 47, 213 N. W. 372. Permitting such repeated references to insurance as appears in the instant case constitutes reversible error. Rutherford v. Gilchrist, 218 Iowa 1169, 255 N. W. 516.

It is true that the verdict is conservative and that passion or prejudice do not appear as far as the amount is concerned, but counsel for plaintiff conceded at the oral argument that contrib-

utory negligence was a fact question for the jury. We are required, therefore, to consider whether overemphasis on the matter of insurance influenced the jury not only in determining the amount of the verdict, but also in deciding the issue of contributory negligence in plaintiff's favor. M. St. P. & S. S. M. Ry. Co. v. Moquin, 283 U. S. 520, 51 S. Ct. 501, 75 L. ed. 1243. Although that case arose under the federal liability statute, the principle there enunciated is applicable here. The court there said (283 U. S. 521, 51 S. Ct. 502, 75 L. ed. 1244):

"In actions under the federal statute no verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice. *Obviously such means may be quite as effective to beget a wholly wrong verdict as to produce an excessive one.*" (Italics supplied.)

Of course, not having been in the jury room, we are not in a position to know what transpired there. We can only judge from experience and by fair and reasonable inference that juries are influenced in determining issues submitted to them by extraneous and irrelevant matters that should not be a part of their deliberations. That this particular jury was no exception in this regard is indicated by the following question a juror asked the court when the jury returned for further instructions:

"Is it all right for me to ask a question? If any one receives benefit from our verdict, do they have to pay income tax from the benefit?"

The fact that the jury were going outside the scope of proper discussion as indicated by this question justifies the inference that they were influenced by undue reference to insurance in determining issues submitted to them. Continual reference to insurance was particularly prejudicial in this case, because of the fact that both drivers were seriously and permanently injured and Hockenhull was insured, while plaintiff was not. What the court said in Prescott v. Swanson, 197 Minn. 325, 336-337, 267 N. W. 251, 257, *supra,* is pertinent here. We quote from that opinion as follows:

"The question of liability in every case depends upon proof. A negligence case is no exception. The facts establishing negligence must be shown. The existence of insurance is wholly irrelevant to the determination of that vital question.

\* \* \* \* \*

"\* \* .\* If human rights (and of property as well) are made to depend upon prejudice, bias, or other improper factors, the jury as the judges of fact issues, instead of being that highly important arm of the court designed to ascertain and determine the truth and so to bring about justice, becomes rather an unwitting instrumentality for defeating the very purpose of its existence."

We are loathe to upset verdicts and grant new trials where fact issues are involved. Our duty is clear, however, where the record shows that the jury's attention was diverted from the main issues by the erroneous admission of testimony which would likely influence it in deciding the issues submitted by the court. We gave due warning in Lee v. Osmundson, 206 Minn. 487, 493, 289 N. W. 63, 65, *supra*, that we would not approve a jury verdict where such testimony is received over objection, when we said:

"\* \* \* Over proper objection, counsel for plaintiff made extensive inquiry to show that plaintiff had only liability coverage. The obvious inference is that he did not have collision insurance to protect him from loss to his own property. This, of course, was clearly inadmissible. It was foreign to the issues of the case and immaterial to the proof of the cause of action. Introduction of such testimony can serve but one purpose. While we do not rely upon this erroneous receipt of evidence as a basis for reversal because of subsequent developments in the procedure, still we could not and would not approve a verdict for plaintiff should he ultimately succeed if such testimony were again introduced."

If counsel desire to protect their verdicts, they must refrain from insisting that prejudicial matter be received in evidence. We cannot permit a verdict to stand that is based upon evidence of such

a highly prejudicial character as that adduced in the instant case. Reversed and a new trial granted.

[1]Reported in 18 N. W. (2d) 535.